UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Zeng Jin Li , an individual, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>JASON NATURAL PRODUCTS, INC., a California Corporation,<br><br>Defendant. | CASE NO.:<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Serve Registered Agent:

CT Corporation System
818 W SEVENTH ST STE 930
LOS ANGELES CA 90017

Plaintiff, individually and on behalf of all others similarly situated, alleges on knowledge as to herself but otherwise on information and belief, as follows:

### I. OVERVIEW

1.  This class action arises out of the fraudulent, deceptive and misleading conduct of Defendant Jason Natural Products, Inc. ("Defendant" or "Jason"). Specifically, for many years Defendant has represented that it "live[s] by a simple Code of Honor," and that the

1

first of four tenets of that Code of Honor is that Jason "select[s] safe, gentle and effective ingredients."[1]  The claim of "gentle" ("Gentle Claim") is repeatedly reinforced in advertising and marketing materials appurtenant to each of Jason's personal care products. For example, Jason represents that it "select[s] only the purest, gentlest ingredients."[2]  In fact, however, Jason's products (including three of those purchased by Plaintiff) contain a startling number of harsh and unsafe ingredients that are not disclosed to--and, in fact, are concealed from--the online customer at the time of purchase.

2. Playing on its overarching claim to utilize only "safe, gentle and effective ingredients," Jason further advertises many of its products as being "all natural," meaning, to the reasonable consumer (and the FTC), that such products contain natural ingredients only, i.e. devoid of any synthetic chemicals ("All Natural Claim").  But Jason's purportedly "all natural" products, including those that Plaintiff purchased, contain numerous synthetic chemicals, including many that are toxic, some of which are known carcinogens or otherwise carry a high risk of harm to product users.  Not only are such products not "all natural" and not "gentle" but, moreover, they are potentially harmful to consumers with no warning of the danger posed.

## ENVIRONMENTAL WORKING GROUP: PLAINTIFF'S SUBSTANTIATION[3]

3. The Environmental Working Group ("EWG") is an American environmental organization that specializes in research and advocacy in the areas of toxic chemicals. Defendant Jason recognizes and relies upon EWG's primacy in toxicity expertise on its

---

[1] http://www.jason-personalcare.com/the-jason-story-1
[2] http://www.jason-personalcare.com/the-jason-story-2
[3] On May 21, 2007, the Supreme Court decided Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), in which it considered "what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act." Since *Twombly,* the course of all Federal litigation has been uniformly predictable, with defendants conducting microscopic studies of what they invariably conclude are "threadbare allegations." In light of the foregoing, we will substantiate Plaintiff's allegations at some length.

own website.[4]  EWG has created a cosmetics safety database which indexes and scores products based on their ingredients.  Known as "Skin Deep," this cosmetics safety database pairs ingredients in over 79,000 products against 50 toxicity and regulatory databases. The database is intended as a resource for consumers, who can search by ingredient or product when choosing personal care products.[5]  EWG's Skin Deep database currently contains 152,581 unique chemicals.  The database developed a hazard rating that reflects known and suspected hazards associated with personal care products and their ingredients. Hazard ratings within Skin Deep are shown as low, moderate, or highly hazardous categories, with numeric rankings spanning those categories that range from 1 (low concern) to 10 (high concern).  Skin Deep evaluates ingredients and products within 17 general hazard categories.[6] The 17 hazard categories were developed based on EWG's review of available data, and modeled after a variety of toxicity classification systems developed by government, industry, and academic organizations.

4.      Among the ingredients in products Jason advertised and supplied to Plaintiff as "gentle," EWG regards the following as "high concern" ingredients: Benzyl salicylate (allergies, contact dermatitis), butylphenyl methylpropional (allergies and contact dermatitis) , "fragrance" or "parfum" (irritation: skin, eyes, lungs), Retinyl palmitate (Biochemical or cellular level change).  ("High Risk Ingredients").  Numerous other ingredients are of "moderate concern," e.g. Behentrimonium Chloride (damages the eyes, irritates skin).

---

[4] "Multiple organizations, including the consumer advocacy group, Environmental Working Group (EWG) . . . ."  http://www.jason-personalcare.com/faq
[5] **Error! Main Document Only.**https://en.wikipedia.org/wiki/Environmental_Working_Group#cite_note-14; https://www.ewg.org/skindeep/site/about.php#5
[6] The concerns are: cancer, reproductive/developmental toxicity, neurotoxicity, endocrine disruption potential, allergies/immunotoxicity, restrictions/warnings, organ system toxicity, persistence/bioaccumulation, multiple/additive exposure, mutations, cellular/biochemical changes, ecotoxicity, occupational hazards, irritation, absorption, impurities, and miscellaneous.

5.    Among the ingredients in products Jason advertised and supplied to Plaintiff as all natural are the following synthetic chemicals: benzyl alcohol (contact allergy), cocamidopropyl betaine (irritation and allergic contact dermatitis), dimethicone (organ system toxicity), ethylhexylglycerin (Irritation (skin, eyes, or lungs)) , benzyl benzoate (allergies and contact dermatitis), benzyl salicylate (allergies and contact dermatitis), butylphenyl methylpropional (lilial), fragrance Irritation (skin, eyes, or lungs), phenoxyethanol Irritation (skin, eyes, or lungs), sodium benzoate, potassium sorbate, retinyl palmitate (Biochemical or cellular level change) , sodium cocoyl isethionate, tocopherol acetate.  ("Synthetic Ingredients")

6.    As a result of Defendant's unfair, unlawful, fraudulent and deceptive practices, Defendant (a) uniformly misled Plaintiff and other consumers into believing (and based thereon purchasing) that Jason products (actually containing High Risk and Synthetic Ingredients) were gentle, and (b) uniformly misled Plaintiff and other consumers into believing (and based thereon purchasing) that Jason products containing High Risk and Synthetic Ingredients were all natural. But for Defendant's false representations to Plaintiff and consumers would not have purchased such products, and certainly not at the price they paid.

## II.  JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the Class members and Defendant are citizens of different states.  Venue is proper in the Southern District of New York because many of the acts and transactions alleged herein occurred in substantial part in this District.

## III.  PARTIES

8.    Plaintiff Zeng Jin Li  ("Plaintiff") is an individual residing at 1036 Balcom Ave., Bronx, New York 10465.

9.     Defendant Jason Natural Products, Inc. is a California Corporation, first registered in 1972.  Its manufacturing facilities are in Culver City, California. As a subsidiary of The Hain Celestial Group Inc., Defendant's headquarters address is that of Hain, in Lake Success, New York. Defendant marketed, advertised, and/or distributed the products during the Class Period throughout the United States, including in New York and all of its counties.

### IV.  ALLEGATIONS OF FACT

10.     On or about November 29, 2017, while perusing a women's health site, Plaintiff read an article featuring one of Jason's products, to wit: Jason Gentle Basics Facial Cleansing Towelettes. Seeking gentle products during her pregnancy, Plaintiff pursued this item. Plaintiff clicked the hyperlink to amazon.com's Jason storefront and thereupon sent the towelettes to her cart.

11.     At this point Plaintiff was in Jason's Amazon storefront, with titles, bylines, links, menus and advertising content all supplied directly by Jason.

12.     Plaintiff then proceeded to shop further via the "Jason" hyperlink provided at amazon.com, making her way to Jason's Baby Bathing & Skin Care offerings.  She found a "Kid's Only ALL NATURAL SHAMPOO" (for her toddler) that Jason described in the Product Description as "Extra Gentle Shampoo for children of all ages . . . Extra gentile . . . extra-mild botanical surfactants:[7]

---

[7] https://www.amazon.com/Jason-Kids-Only-Shampoo-517ml/dp/B01KVM1HIK/ref=sr_1_1_s_it?s=baby-products&ie=UTF8&qid=1513567129&sr=1-1&keywords=extra-mild+botanical+surfactants%3A

5



Unbeknownst to Plaintiff, EWG grades this product as moderately hazardous, citing the "Irritation (skin, eyes, or lungs)" of fragrance, a highly hazardous ingredient.[8]

13.     Plaintiff selected the children's shampoo, sent it to her cart and continued to shop the Jason's site looking for and finding a shampoo/conditioner set, advertised as "All Natural" and labeled as "Pure Natural:"

 

JASON All Natural Organic Biotin Shampoo and Conditioner...

*3.8 out of 5 stars* 128
$17.48$ 17 48 ($0.55/Ounce)

(above matter located underneath images in actual ad)

---

[8]https://www.ewg.org/skindeep/product/376214/JASON_Kids_Only%21_Extra_Gentle_Conditioner_%28old_formulation%29/#.Wh4V2bbMzwc

14. After receiving her products, plaintiff applied a small amount of the kid's shampoo to herself as test, prior to using it on her toddler. She found that after leaving it on briefly and washing it off and drying her wrist, she had noticeable dryness in the test area. She did not use the shampoo on her toddler.

15. Plaintiff then opened the shampoo and smelled it, noting a strong odor that she could not tolerate. Plaintiff's husband used the shampoo and experienced significant itchiness and dandruff. He also used the conditioner and found that it did not moisturize his hair or leave him with any smoothing effect (as other conditioners have done). Plaintiff's husband has ceased using the shampoo and conditioner.

16. Following these two tests, Plaintiff determined that the two shampoos were not all natural or gentle; and she feels strongly that Jason is abusing the public.

17. Unbeknownst to Plaintiff, EWG grades the biotin shampoo product as highly concerning on its hazard index, citing retinyl palmitate (developmental/reproductive toxicity, biochemical or cellular level changes, cancer, Organ system toxicity (non-reproductive)) and fragrance as two highly-hazardous ingredients. In addition to advertising these two products as "ALL NATURAL," Jason described the shampoo in the Product Description as " . . . gently cleanses" and the conditioner as " . . . gently moisturizes."

18. "Gentle" in personal care products (according to Jason) means at least this: "proven to care for dry, sensitive skin without causing redness or irritation."[9] In the hair care subset, moreover, "gentle" means therapeutic cleansing formula that cares for sensitive and normal-to-dry scalps prone to itching and flaking caused by dryness, dermatitis or eczema.  True "gentle" shampoos (let alone extra-gentile) are free of synthetic fragrance and other High Risk Ingredients.  Aside from their effect on the scalp, gentle shampoos will not strip the hair of its natural oils . . . nor will they present significant risk of harm to intended users.[10]

19. Plaintiff selected the shampoo/conditioner and consummated the purchase of the four (4) Jason products, paying $17.48 for the Shampoo/Conditioner set and $22.50 plus $8.99 (S&H) for the Kid's Shampoo.  The three (3) purportedly "all natural" and "gentle' products will be referred to as "Products" at times hereinafter.  The towelettes are not issue in this litigation.

20. Defendant's representations that the Biotin and Kid's shampoos are "all natural" were false.  Not only do they contain Synthetic Ingredients, rendering them *not* all natural as a matter of law; but they also contain "High Risk" ingredients and cannot fairly be said to be gentle and, with even greater certainty, cannot be said to be "extra gentle."

---

[9] https://www.amazon.com/Jason-Gentle-Basics-Facial-Cleanser/dp/B01BF14A3U
[10] EWG's ratings criteria eliminate individual susceptibilities.   See https://www.ewg.org/skindeep/site/about.php#4

21.     Defendant's representations that the conditioner is all natural is likewise false. Not only does the conditioner contain Synthetic Ingredients, but it also contains High Risk Ingredients (fragrance/parfum) and cannot truthfully be represented as gentle because it contains the following inrritants: behentrimonium chloride, dimethicone, tocopheryl acetate, ethylhexylglycerin, phenoxyethanol, potassium sorbate, benzyl benzoate, fragrance/parfum .

22.     "Gentle" is universally understood to mean, *inter alia,* non-irritating. Those who have studied shampoos and conditioners have identified a number of common ingredients that they counsel avoiding:[11]

**12 Toxic Ingredients To Avoid in Shampoo and Conditioner**
www.livelovefruit.com

| Sodium Lauryl Sulfate (SLS) | Fragrance | Cocamidopropyl Betaine | Triclosan | Polysorbates | Polyethylene Glycol (PEG) |
|---|---|---|---|---|---|
| Cancer, liver damage, skin rashes, depression | Clogs the lymphatic system, major organ system toxicity | Eye & skin irritation, allergic contact dermatitis | Skin, eye and lung irritation, endocrine & organ disruption | Skin, eye and lung irritation, endocrine & organ disruption | Direct link to CANCER, organ system toxicity |
| Potassium Sorbate | Phenoxyethanol | Retinyl Palmitate | Dimethicone | Behentrimonium Chloride | Quaternium-15 |
| Causes skin and organ system toxicity | Irritant of skin, eyes & lungs, vomiting, contact dermatitis | Carcinogen, causes reproductive & organ system toxicity | Irritation of the skin, scalp & eyes, traps impurities in skin | Damages the eyes, inflammatory agent, irritates skin | Contains carcinogenic formaldehyde, major toxin to body |

23.     Of the 12 toxic ingredients identified in the chart, seven (7) are found among the two shampoos and one conditioner purchased by Plaintiff:  behentrimonium chloride[12] potassium sorbate, frangrance, phenoxyethenol. cocamidopropyl betaine, retinyl palmitate, and dimethicone.  EWG concurs that seven (7) of the 12 toxic ingredients are irritants, while all 12 are mid-level to High Risk Ingredients according to EWG.

24.     Plaintiff was misled at the time of her purchases by Defendant's representations and/or failures to disclose.  The advertisements do not permit the shopper to access

---

[11] This chart was prepared by Carly Fraser, a blogger with a BS in Neuroscience.  See https://livelovefruit.com/12-toxic-ingredients-to-avoid-in-shampoo/  Ms. Fraser's findings correspond closely to the conclusions of EWG, as per ¶17 hereof.

[12] Also known as docosyltrimethyl ammonium chloride, this cheap, harsh chemical can cause skin and eye irritation.

product ingredients.[13] The representations and/or non-disclosures were designed to, and did, deceive members of the public, just as they deceived Plaintiff. Plaintiff did not know the Shampoos/Conditioner contained High Risk and Synthetic Ingredients, and reasonably relied on Defendant's representation that the Shampoos/Conditioner were All Natural and Gentle. Had Plaintiff known the truth about the Products, Plaintiff would not have purchased them, and certainly not at the price she paid.

25. Authentic all natural and extra gentle shampoos are more costly to manufacture than synthetic shampoos, and more expensive to purchase. Thus, while Jason calculates it product's retail price at $.55 per ounce, authentic all-natural shampoo costs much more, e.g. several collected all-natural shampoos cost roughly $2.50 per ounce.[14]

26. Plaintiff thus did not get the benefit of her bargain when she was promised all-natural, gentle and extra-gentle shampoos, but received highly toxic products instead. She suffered injury in fact in reliance on Defendant's representations and failures to disclose. That injury is the difference between the value she was promised and the value received, i.e. roughly $2.00 per ounce. Conditioner is usually equal to or greater in price than comparable-quality shampoo.[15]

27. Jason sells through many channels online and off-line. Substantially all packaging and online advertising is created, coordinated and managed by Jason, regardless of retailer identity. For that reason, the same language is used on different ecommerce sites in marketing the same Jason product, regardless of retailer identity. All

---

[13] https://www.amazon.com/Jason-Kids-Only-Shampoo-517ml/dp/B01KVM1HIK/ref=sr_1_1_s_it?s=baby-products&srs=16068206011&ie=UTF8&qid=1513527160&sr=1-1
https://www.amazon.com/Natural-Organic-Conditioner-Stopping-Chamomile/dp/B014VLOD24/ref=sr_1_1_s_it?s=beauty&ie=UTF8&qid=1513528023&sr=1-1&keywords=JASON+All+Natural+Organic+Biotin+Shampoo+and+Conditioner
[14] https://www.100percentpure.com/collections/shampoo
[15] See http://www.totalbeauty.com/content/gallery/salon-hair-products-worth-every-penny/p97662/page9 and http://www.totalbeauty.com/content/gallery/salon-hair-products-worth-every-penny/p97632/page6

class members saw the identical or substantially identical language in purchasing the Products that Plaintiff purchased.[16]

## V. PRIOR FEDERAL TRADE COMMISSION PROCEEDINGS CONCERNING 100% NATURAL COSMETIC CLAIMS

28.     The Federal Trade Commission ("FTC") has made clear in its official pronouncements, rules and orders that it is false and deceptive to advertise or package a product as "All Natural" or "100% Natural" if it contains one or more synthetic ingredients.  The FTC has also made clear in its official pronouncements, rules and orders that "[i]f companies market their products as 'all natural' or '100% natural,' consumers have a right to take them at their word."[17]

## VI.  CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action on behalf of herself and  (3) classes.  The first class consists of those who, not for resale, purchased online pursuant to an All Natural Claim, the Shampoo and/or Conditioner purchased by Plaintiff, within the state of New York, in the three years preceding the filing of this Complaint.  ("Shampoo/Conditioner Class")

30.     The second class consists of those who, not for resale, purchased the Jason All-Natural Kid's Shampoo, from any source whatever, within the State of New York, in the three years preceding the filing of this Complaint. ("Kid's Class")

---

[16]    See    https://www.ebay.com/p/Jason-All-Natural-Organic-Biotin-Shampoo-and-Conditioner/1465567546?iid=282187001884;
https://www.pinterest.com/pin/839499186759519382/; http://essential-organic.com/jason-all-natural-organic-biotin-shampoo-and-conditioner-for-hair-growth-and-stopping-hair-loss-with-aloe-vera-ginseng-and-chamomile-paraben-free-sulfate-free-vegan-gluten-free-16-fl-oz-each/;  http://www.shopclues.com/jason-all-natural-organic-biotin-shampoo-and-conditioner-for-hair-growth-and-stopping-hair-loss-with-aloe-vera-ginseng-and-chamomile-paraben-free-sulfate-free-vegan-gluten-free-16-fl.-oz.-each-4.html.

[17] See https://www.ftc.gov/news-events/blogs/business-blog/2016/04/are-your-all-natural-claims-all-accurate;      see      also      *In      re      California      Naturel,* https://www.ftc.gov/system/files/documents/cases/161212_docket_no_9370_california_naturel_final_order.pdf

31. The third class consists of those who, not for resale, purchased any Jason Shampoo or Conditioner advertised as "Gentle," (including "Extra Gentle") from any source whatever, within the State of New York, in the three years preceding the filing of this Complaint. ("Gentle Class")

32. Plaintiff seeks in her own right an injunction against Defendant's use of the words "Gentle" or "Extra Gentle" on any product (or its advertising) containing High Risk Ingredients, as addressed hereinafter.

33. Excluded from the Classes is any person or entity in which any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff, have any controlling interest. Also excluded from the Class is any partner or employee of Class Counsel.

34. Plaintiff reserves the right to modify the definition of Classes after further discovery. The use of the word "Class" hereinafter shall mean all three (3) classes, absent contextual indication to the contrary.

35. Questions of law or fact common to Class Members predominate over any questions affecting only individual Class Members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

36. <u>Numerosity of the Class</u>. The respective Classes are each so numerous that joinder of all members in one action is impracticable. While the exact number and identities of Class Members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery directed *inter alia* at Defendant, Plaintiff believes and therefore alleges that there are tens of thousands of members in each Class.

37. <u>Typicality of Claims</u>. Plaintiff's claims are typical of those of other Class Members in the respective classes, all of whom have suffered similar harm due to Defendant's course of conduct as described herein.

38. <u>Adequacy of Representation</u>. Plaintiff is an adequate representative of the Classes, will fairly and adequately protect the interests the Classes, and has retained

attorneys who are highly experienced in the handling of class actions; and Plaintiff and his counsel intend to prosecute this action vigorously.

39. <u>Predominance of Common Questions of Law or Fact</u>.  Common questions of fact and law exist as to all Class Members (in each respective Class) that predominate over any questions affecting only individual Class Members.  These common legal and factual questions, which do not vary among Class Members, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following relative to the Classes as indicated:

- Whether Defendant's uniform representation that the relevant product is "All Natural" was likely to deceive a reasonable consumer;
- Whether Defendant's uniform representations of the terminology "Gentle" or "Extra Gentle" was likely to deceive a reasonable consumer;
- Whether the relevant product contains one or more Synthetic Ingredients;
- Whether the fact that Defendant's relevant product is not all natural and contains Synthetic or High Risk Ingredients would be considered "material" information to a reasonable consumer;
- Whether Defendant's uniform representation that the relevant product is "All Natural" was false;
- Whether Defendant's uniform representation that the relevant product is "Pure Natural" was false;
- Whether Defendant had a duty to disclose that the relevant product contains a synthetic chemical surfactant;
- Whether Defendant's alleged representations and non-disclosures constitute a violation of Sections 349-350 of New York's General Business Code;
- Whether Defendant's conduct caused harm to the Class;
- Whether, absent Defendant's representations and non-disclosures, the market value of the relevant product would be less than prices paid by the respective Class

members, such that the members of the Class suffered out-of-pocket loss as a result of Defendant's representations and non-disclosures;

- Whether authentic all natural shampoo and conditioner is worth more than the Shampoo/Conditioner and Kid's Shampoo, such that members of the classes did not receive the benefit of their bargain, but rather, suffered an insufficiency of consideration;
- Whether injunctive relief is appropriate and necessary in order to cure the harm caused by Defendant continuing misleading statements and non-disclosures regarding the Shampoo/Conditioner and Kid's Shampoo being 100% Natural; and
- Whether injunctive relief is appropriate and necessary in order to cure the harm caused by Defendant continuing misleading statements and non-disclosures regarding its shampoo and conditioners being "Gentle" and "Extra Gentle."

40. <u>Superiority</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because individual litigation of the claims of all Class Members is impracticable.  Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every Class Member could afford individual litigation, the adjudication of more than a million identical claims would be unduly burdensome to the courts.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the Class Members.  Plaintiff anticipates no difficulty in the management of this action as a class action.  The prosecution of separate actions by individual Class Members may create a risk of adjudications with respect to them that

would, as a practical matter, be dispositive of the interests of the other Class Members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class Members to protect her interests.

**COUNT I:**
**New York Consumer Protection from Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §§ 349)**
**On Behalf of the New York Classes**

41. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 40 as if fully set forth herein.

42. New York General Business Law ("NYGBL") §349 provides: Deceptive acts or practices in the conduct of any business, trade or commerce or the furnishing of any service in this state are hereby declared unlawful."

43. Jason represents that the shampoo and conditioner products at issue herein are "All Natural."

44. Jason represents that the products purchased by Plaintiff and otherwise at issue herein are "Gentle" and "Extra Gentle."

45. Defendant uniformly represented to Plaintiff and the Classes that the two Biotin products and Kid's shampoo are all natural, and to Plaintiff that products containing High Risk Ingredients are gentle. These representation were false and misleading, and misstated the qualities, characteristics and ingredients of the products at issue, as same contain Synthetic and High Risk Ingredients.

46. Even if Defendant's representations that the products are all natural and gentle were not false (they were), Defendant's representations were misleading without disclosure of the additional fact that same contain High Risk and Synthetic ingredients.

47. Defendant violated its duties of disclosure because its glowing representations of product purity, naturalness, gentleness and safety tended to leave consumers woefully misinformed and misled as to the true character of Jason's shampoos and conditioners.

48.  Defendant's conduct by way of its affirmative representations and non-disclosures are and were likely to mislead a reasonable consumer.

49.  Defendant's conduct constitutes one or more violations of NYGBL §349.

50.  Plaintiff and the Classes suffered harm as a result of Defendant's statutory violations in that they purchased the Products, which they would not have purchased but for Defendant's representations and failures to disclose, and certainly not at the prices they paid.

51.  Absent Defendant's All Natural Claims, representations and/or failures to disclose, the market value of the Products purchased by the Shampoo/Conditioner and Kid's Classes would be substantially less than the prices paid by Plaintiff and the Class. Consequently, Plaintiff and the said Classes uniformly suffered "out of pocket" loss as a result of Defendant's violations of the Section 349.

52.  In addition to overpaying for what they did receive, class members received less than that for which they did pay, i.e. they did not receive the benefit of their bargain.

53.  Shampoo/Conditioner and Kid's Class members are entitled to recover approximately $2.00 per ounce purchased by reason of the insufficiency of consideration received (standard toxic product) versus consideration promised (all natural product).

54.  Alternatively class members are entitled to recover $50 per transaction involving the purchased of accused product by Class members.

## COUNT II
### Violation of §§349-350 of the New York General Business Law (Injunction)
### Plaintiff, Individually

55.  Plaintiff re-alleges all preceding allegations as though set forth at length.

56.  Plaintiff is entitled to obtain injunctive relief to protect the public from Jason's deceptive practices:

> Given the afore cited purpose of the statute, to encourage private enforcement of consumer protection, to strongly deter deceptive business practices, and to supplement the activities of the New York State Attorney General in prosecuting consumer fraud complaints, I hold that the Legislature intended the irreparable injury at issue to be irreparable injury to the public at large, not just to one consumer.

*Schatz v. Cellco P'ship*, 842 F. Supp. 2d 594, 608 (S.D.N.Y. 2012), citing *McDonald v. North Shore Yacht Sales, Inc.,* 134 Misc. 2d 910, 513 N.Y.S.2d 590 (Sup. Ct. 1987).

57. Even if Defendant's representations that the products are all natural and gentle were not false (they were), Defendant's representations were misleading without disclosure of the additional fact that same contain High Risk and Synthetic Ingredients.

58. Defendant violated its duties of disclosure because its glowing representations of product purity, naturalness, gentleness and safety tended to leave consumers woefully misinformed as to the true character of Jason's shampoos and conditioners.

59. Defendant's conduct by way of its affirmative representations and non-disclosures are and were likely to mislead a reasonable consumer.

60. Defendant's conduct constitutes one or more violations Sections 349-350, NYGBL.

61. Plaintiff and the Classes suffered harm as a result of Defendant's violations because they would not have purchased relevant products but for Defendant's representations and failures to disclose, and certainly not at the prices they paid.

62. Plaintiff is entitled to an injunction against Defendant's use of the words "Gentle" and "Extra Gentle" on products containing High Risk Ingredients.

63. Plaintiff is further seeking an order enjoining Defendant's violations of the NYGBL including, but not limited to, an order:

(a) Requiring Defendant to immediately remove all advertisements, packaging and labeling of the Products that the same are all natural or gentle.

(b) Requiring Defendant to prominently disclose on the front of the product labels and product packaging in bold print and large font that "**THIS PRODUCT IS NOT ALL NATURAL OR GENTLE. IT CONTAINS SYNTHETIC CHEMICALS AND HIGH RISK INGREDIENTS LIKELY TO CAUSE IRITATION OF THE EYS, SKIN AND LUNGS IN A PERCENTAGE OF USERS,**" in order to cure the false advertising Defendant has been disseminating for years.

(c) Requiring Defendant to prominently disclose on its website the following statement: "**JASON NATURAL LABEL SHAMPOOS AND CONDITIONERS ARE NEVER ALL NATURAL BECAUSE EACH CONTAINS SYNTHETIC CHEMICALS, AND THEY ARE NOT GENTLE BECAUSE EACH CONTAINS HIGH RISK INGREDIENTS LIKELY TO CAUSE IRITATION OF THE EYS, SKIN AND LUNGS IN A PERCENTAGE OF USERS.**"

WHEREFORE Plaintiff, on behalf of herself and the Class, prays as follows:

a. An order certifying this case as a class action, designating Plaintiff as the representative of the Class and her counsel as class counsel;

b. A permanent injunction against Jason affording the relief specified in paragraph 62 hereinabove and such other and further injunctive relief as the Court may deem necessary and appropriate;

c. Statutory damages pursuant to NYGBL §349;

d. Actual damages;

e.  Attorney fees; and

f.  Costs.

### JURY DEMAND

Plaintiff demands a trial by jury as to all triable issues.

        /s/Mark Schlachet_____
Mark Schlachet
Law Offices of Mark Schlachet
3515 Severn Road
Cleveland, Ohio 44118
Telephone: (216) 225-7559
Facsimile: (216) 932-5390
Email: markschlachet@me.com

***Attorney for Plaintiff and the Class***